This is the case, the In Re, the application of Accent Delight. Are we ready to proceed? Yes, I am, Your Honor. Marcus Asner with Arnold and Porter on behalf of Sotheby's, Inc. Your Honors, the district court treated the absence of a territorial limitation to mean that 1782 extends to evidence overseas. That has the law precisely backwards. Under the Supreme Court jurisprudence in Morrison and RJR, where there is no clear, unmistakable indication of an extraterritorial application, there is none. Here, the text on 1782 is silent, whether it covers evidence located overseas. Excuse me. Excuse me? Excuse me. Judge Walker, coming to you remotely from distant Connecticut. No application overseas. Explain that part, because I thought there was application overseas. So there's two prongs to the Morrison and RJR test. First, you look whether there's application overseas, and then you look at the focus of the statute to ascertain whether the application in this specific case has a domestic application or an extraterritorial application. If it has an extraterritorial application, then it's not allowed if you get to the second prong of Morrison and RJR. And here, I think the law is very clear that there is no extraterritorial application under 1782. The face of the statute is silent about extraterritorial application. And then if you use the standard sort of tools that this court uses to ascertain the intent of Congress, and Morrison allows you to look at the context to ascertain whether there is an extraterritorial application. And the standard tools cited in our briefs, including the fact that other provisions passed during that time period in the 64 Act... But you want to talk about the reference to the federal rules of civil procedure in the statute? Yeah, sure. The rules of the... The reference to the federal rules, if you divide... If you take a close look at 1782, it has five sentences. The first sentence talks about jurisdiction. It gives the power to the judge to give discovery in aid of foreign cases. Four and five are the two sentences that concern the court here. And four is very focused on the procedure that the court has the power to adopt. Five says if the court doesn't adopt that procedure, then you go back to the federal rules as a default procedure. And it's clear that 1782 didn't adopt whole hog the federal rules of civil procedure. In fact, it wouldn't make any sense. So, for example, requests for admissions and interrogatories, it's well established under the case law, are not incorporated into 1782. And in fact, if you take a look at 26B, if 26B was incorporated into 1782, the scope of discovery regarding matters are a relevant party's claim or defence, but 1782 explicitly talks about investigation in advance of a criminal proceeding. So, we think it's very clear under the law. And, you know, in addition, you have authority from Hans Schmidt, who was one of the drafters. And this court's own cases suggest, as does Intel suggest, that it does not have... 1782 does not have an extraterritorial application. So, you get to the second prong, which is the focus. The 11th Circuit was just wrong? Pardon? The 11th Circuit was just wrong? The 11th Circuit was just wrong. And, in fact, you do a careful reading of Segovia, it takes it out of context. The language there was just wrong. And it's inconsistent with the dictates of Morrison and RJR that unless it's unmistakable and clear, then you're supposed to presume a domestic statute and not an extraterritorial application. Can you talk about the Intel factors here that the district court applied? Sure. I think the district court erred under Intel really, you know, in the shortness of time. Let me focus on two things. The district court erred because it relied on the formality of the 1782 petition seeking material only from Monaco. And it ignored the fact that there was an ongoing, active Swiss civil case. And the district court erroneously cast the situation as petitioners merely seeing Sotheby's as a potential adversary, when, in fact, that case was ongoing and active. The petitioner... What's the role of Sotheby's in that case? Sotheby's is the plaintiff in that case. It's a declaratory judgment action in Geneva that we filed together with Bouvier, technically, with an eye towards resolving this once and for all because we could get all of the parties together. Bouvier, you can't bring into the United States. You can't get him in necessarily in London. The proper forum here to resolve this once and for all was in Switzerland. And so petitioners go to great lengths to sort of to try and recast that case and say, no, it's just an invitation for conciliation, but their own statements below make it very clear that they themselves viewed this as an active case. In fact, they said so in front of the district court. And you don't have to go too far. You can, in fact, look at the Lugano Convention. They themselves have said that under the Lugano Convention, the Swiss case bars their action that they wanted to bring in London. But the problem with that is under Article 30 of the Lugano Convention, which is in Joint Appendix 805, that will only happen if, in fact, there is an active case going on. So their own admission that they're barred is an admission that this is an active case. And effectively, Judge Furman got it wrong. But you claim that you filed it to bar the filing of a suit in England, isn't it? We filed it because it was the proper forum. I'm just asking, isn't that their claim? That is their claim. That's their claim, yeah. You're trying to jump ahead of them. Well, it's a declaratory judgment action because London was the improper forum, we felt, and the proper forum because almost all of these deals took place in Geneva. A lot of the art was stored in the Geneva Freeport. Rabola Love at the operative times in Bouvier were both living in Switzerland. And so, in fact, we know that Geneva is the proper forum because when they filed their Swiss criminal case, they explicitly represented to the Swiss court that Switzerland was the proper forum. There was another error, by the way, going to the intel factors. Judge Furman, when he was evaluating the burdened, is supposed to evaluate whether the burden to Sotheby's is proportional to the need. And he adopted a standard that while the Swiss proceeding, I'm sorry, the Monaco proceeding only concerns three of the art pieces. He cut back on the production, didn't he? He cut it down to 14. Fourteen works, right? Exactly, because we only were involved with 14 works. And so, otherwise, we would have had to have 38 works. Many of which we were not involved with. But he used a standard, and this is an error. He used a standard that the other works, the transactions with respect to the other works were not irrelevant to the Monaco proceeding. That's not the right standard. The right standard is that they have to be proportional. And here, you know, especially where it's a fishing expedition where there's some hope perhaps that there might be something that they could find in any of these other transactions that could help them in Monaco. It underscores that this is really a ruse. And what the purpose of their 1782 petition is, is to get discovery from Sotheby's to use against Sotheby's in the case in Geneva. I just ask you about the stay that was entered before. As I understand it, you're not pursuing an appeal on Judge Furman's decision to allow distribution of the prior produced materials to other forms, right? That's correct. So there were two petitions. There was the first petition, and we did produce documents with respect to that, and we did not appeal that point. Right. So does the stay apply to that? Presently, the stay does apply by order of the court. And, you know, we understand that Bouvier is going to be seeking to try and claw back those documents. I understand he has not done that. So you oppose lifting the stay to that extent? I don't oppose lifting the stay to that extent. Okay. Thank you. Yes. You are aware that the question of 1782's extraterritorial application is before the court in another case? Yes, Your Honor. Now, I know you're challenging how the court applied 1782 as well as whether it could apply it at all. But on the whether it could apply it at all extraterritorially, is there anything you want to say to us about why we shouldn't wait until that other panel decides it? That is the normal practice of the court. I guess I don't have much to add to that. I think... I just wanted to make sure we weren't, you know, that there was some point that you wanted to make to us on that question that we weren't, you know, weren't giving you an opportunity to make. The only point I would make in that regard is that when you look at the focus here, the petitioners try very hard to cast the focus as with respect to disclosure. And I think that that takes an incredibly cramped and narrow view. You know, first off, we could rely on Microsoft where it draws a distinction between disclosure and gathering. And I know the court was split on the denial of the en banc on that, but the fact that it was split there shows that Microsoft, there was even a stronger rationale for focusing on where the evidence was because to the extent there was a split, it was about the purpose of the Stored Communications Act being about privacy. And there was a concern that disclosure under 2702, the pre-statute before 2703, there was an issue about whether privacy would be triggered when it's actual disclosure or the grabbing of the evidence from Ireland. Here, it's plain that the focus here is the evidence and getting evidence that's in the United States and providing it to litigants overseas. Thank you. Mr. Osner. Mr. Corsi. Thank you, Your Honor. May it please the court, a good way to think about this case is the following hypothetical. If Congress passed a law saying that certain proceedings should be conducted according to the federal rules of evidence, it doesn't mean not Rule 801 and not Rule 406. If Congress passed a law saying certain things should be conducted according to the Constitution, it doesn't mean minus the Fourth Amendment. What happened here with the reference to the federal rules of civil procedure was precisely like that because those provisions dealing with discovery, particularly Rule 45, are what would be most relevant to the statute. And that's why this is a clear affirmative statement. The reference to the federal rules in the statute is a signifier. It's a stand-in for those portions of the federal rules as if they were listed rule by rule by rule. And we know traditionally, historically, the test for production of documents is control, not location. That's a statement from the Mark Rich case in this court in 1983. And in the last year or so since the Morrison and RJR case, this court has decided a number of cases, including one by Judge Walker a year ago, almost to the day, the Moon UK Choi case, 890 F3rd 60, where the Commodities Exchange Act was applied to trades on the Korean exchange. And since then, and after the briefing in this case, the court decided the Picard case involving the Madoff bankruptcy, which laid out the approach that should be taken that, okay, first you see whether there is a clear affirmative statement. We say there is. If that's met, we don't talk about presumption against extraterritoriality. That only comes in if there is no clear statement. Then you do a number of things. One, you have to examine the statute involved very carefully and the particular purpose of it, the regulation, the conduct involved. And then you decide whether it works in tandem, the two aspects, and whether the focus is on the domestic application. Here, we're talking about ordering an American company headquartered in the Southern District to produce documents. Many of them may be ESI, so it's really a matter of pressing a button from someone's office and perhaps some paper documents. For all we know, all the documents are already in the district. So the- And the petition named individuals, too, right? The original application? Yes. What's the status of the discovery against them? Adelson, Parris, Simon, those three people? They're not involved at this stage. They produced the documents with the last round and those have been provided to the courts that proceedings were allowed. So they're not part of- The documents are just Sotheby's documents. Correct. Just Sotheby's. Only here. And the- As Judge Lynch demonstrated pretty well in his concurring opinion in Microsoft, we're talking about domestic application, that when you deal with electronic documents, there is no burden. It's a matter of just, again, computerizing and pushing some buttons to get them here. That's why the extraterritorial argument here doesn't apply. And the Supreme Court just about a year ago in a case called West and Giro applied the same test and said foreign patent damages arising from an American case does not involve an extraterritorial application. In the Picard case, it was a bankruptcy situation which tried to recover something from a subsequent transferee who was overseas. And in the Mee-Yun Chu case, in terms of the Commodities Exchange Act, careful analysis shows that the magic phrase, presumption against extraterritoriality, does not apply and it should be something that is very carefully considered. So we think that addresses that argument. And as to the other cases pending, we know Judge Droney is sitting on that panel and the oral argument was March 25th. What we think, too, is that the issue of extraterritoriality was somewhat peripheral in that case. It was not a major part of it. And we don't know whether the panel will even decide that or rule on it. And that may go into the factoring of whether or not to defer. Here, while we think it's wrong and Judge Furman carefully dealt with it, it's important. The other thing... I have an intel question. Is Sotheby's a party to the proceedings in Switzerland or Monaco? Not the criminal proceedings for which we brought the 1782 petition. They are not. The civil proceeding that they brought is a separate proceeding and Judge Furman issued a protective order, which is very important in how the case gets managed because this judge has great latitude. We understand that. But the protective order means we can't use any document that we get under 1782 without his permission. And he has been very careful and strict about what we can do and what we can't do. So that we are applying now to use these documents in the two criminal proceedings, one in Switzerland, one in Monaco, that's all we're applying for now. If we want to use them anywhere else, then we would have to go back to Judge Furman. And that's the state of play and it makes perfect sense. So that's the situation. On the stay question that Your Honor raised, we would hope in view of the concession that counsel made that the court either from the bench or within a day or so in a short order would perhaps lift that stay because the petitioners need to be able to refer to the documents that have been filed in the Swiss criminal proceeding but they haven't been able to use them. There was a window between Judge Furman's order and the temporary stay we filed but we haven't been able to use them so it's important to have that flexibility to have the ability to communicate with the court in Switzerland what the documents mean. They're there but everybody else in the case can use them. The judge, the defendant, Bouvier, whoever, we cannot and that's a disadvantage and in view of it not being appealed and they're not seeking review of it, we would ask the panel to lift that stay immediately. We have tried a couple of times by motion but we have not been able to achieve that. So in essence, what we're saying is that the court should simply affirm the decision below on the intel factors. The first intel factor focuses on whether Sotheby's is a party in the proceedings that we're seeking in response to Your Honor's question. They're not, we're not doing anything as a ruse as Judge Furman carefully pointed out. If we discovered on the first round that there was information in the documents that indicated we might have a cause of action or a claim against Sotheby's, then we were entitled to go back to Judge Furman and say we want to bring a claim and can we use those documents. And as Your Honor's know, we do have a case pending now before Judge Furman. It's on a motion to dismiss awaiting decision and by agreement with counsel, we were able to use the documents that had been previously produced for that and that's where we are. So we ask the court to affirm. Thank you. Mr. Asner, you've reserved a couple of minutes. Yes. Yes, Your Honor. A few points. Let me first go to the intel factors point. Kybal and Schmidt of this court, in addition intel, make it very plain that you're not supposed to just rely upon the formalities that they happen to find a case where in Monaco and then pin everything on this case when in fact this is a worldwide litigation. And if that's going to be the rule where you focus just on the formalities of how they artfully pleaded the matter, then when you're dealing with complex cross-border litigation, then that swallows, 1782 swallows all of the comedy rules that, comedy rules that are there to, in light of 1782 that give the justification for 1782. In addition, it's important to keep in mind when you consider how much they need it in Monaco. The Monaco magistrate never filed an MLAT, never filed a mutual legal assistance treaty request. And in fact, Mr. Kornstein before Judge Furman at Joint Appendix 392 to 393 explicitly advised the court that the Monaco magistrate has the core documents from the first petition that it actually needs. And those are the differential, the documents that would show the price that Bouvier paid to Sotheby's to get the pieces. And then they already have the documents that show how much Bouvier sold the pieces to Rebolalev. So they already have the key documents and they've conceded that below. So it just evidences that in fact this whole thing is an effort to pigeonhole it into Monaco to get discovery against us. I have to disagree with that this is as simply as pressing a button. The Soleri affidavit that is put forth in Joint Appendix 1200 talks about how this is very different from the situation in Microsoft. In fact, a lot of these documents are hard documents and they reside in London, Switzerland, Austria throughout the world. This would be extremely burdensome. And I think we addressed the Federal Rules of Civil Procedure, but I'll point that the Senate report also talks about specifically the appropriate provisions of the Federal Rules, not that they're adopted whole hog. Thank you, Your Honor. Thank you. Judge Walker, do you have any additional questions for counsel? No, I don't. At this point, I don't have any more. Thank you. Thank you, Your Honor. So we'll reserve decision in this matter and we'll ask the clerk to adjourn court at this time. Court is adjourned.